IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROVERTA DRAKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-252 |
| | ) | Judge Nora Barry Fischer |
| LAUREL HIGHLANDS FOUNDATION, | ) | |
| INC. and JAMES PEARL, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

On this 27th day of November, 2007, upon consideration of Plaintiff's Motion for
Reconsideration ("Plaintiff's Motion") [DE 17] and Defendants' responses thereto [DE 18, 20] and
for the reasons that follow, Plaintiff's Motion is GRANTED.

**I.      Factual Background**

Plaintiff, Roverta Drake ("Plaintiff"),[1] is a 62 year old African-American woman with alleged
disabilities and/or perceived disabilities.  Plaintiff filed a complaint with this Court alleging
employment discrimination by her employer, Laurel Highlands Foundation, Inc. and James Pearl,
supervisor/manager of Laurel Highlands Foundation, Inc. (collectively, "Defendants") in violation
of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), the Americans
with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Age Discrimination in
Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").  (Docket No. 1 ("Complaint") at ¶¶ 1, 7).

---

[1]Although the case caption in this case identifies Plaintiff as "Roverta Drake," Plaintiff is
referred in her own documents filed with the Court as both "Roverta Drake" and "Roverta
Drakes." (*See, e.g.* Document Nos. 1, 17). Accordingly, for the purpose of this memorandum, the
Court will assume that Roverta Drake and Roverta Drakes are one in the same.

Plaintiff worked as a Program Assistant in Defendants' Uniontown, Pennsylvania residence for mentally retarded individuals. *Id*. at ¶ 4. Plaintiff, who was employed by Defendant for six (6) years, alleges that she was subjected to a continuous and ongoing hostile work environment, disparate treatment, harassment, humiliation and discrimination based on her age, race, disabilities and/or perceived disabilities, and because of retaliation from her employer for complaining about the ongoing hostile work environment, disparate treatment, discrimination and for taking medical leave for heart surgery. *Id*. at ¶ 11.a, b. Further, Plaintiff alleges that her supervisor, James Pearl, "pried" into Plaintiff's medical conditions and conveyed information to other staff members regarding Plaintiff's heart condition, causing embarrassment to Plaintiff. *Id*. at ¶ 11.d, e.

Defendants terminated Plaintiff's employment on or about February 4, 2007 after investigating allegations that Plaintiff struck with her hand a resident of Defendants' facility during a work-related outing. Plaintiff denies that she struck the resident. Instead, Plaintiff alleges that what appeared to be a striking motion, was actually a spasm in her right hand and arm. The spasm occurred due to a medical condition, which allegedly required further surgeries. *Id*. at ¶ 11.f. Plaintiff further alleges that the actual reasons for her termination were discriminatory and retaliatory in nature. *Id*. at ¶ 11.h-k.

Defendants deny that Plaintiff was discriminated against, retaliated against or harassed in any way. (*See generally*, Document No. 4 ("Answer")). Further, Defendants maintain that Plaintiff was terminated because Plaintiff physically abused and/or assaulted a developmentally disabled resident, an act that cannot be tolerated by an employee of a residence for developmentally disabled individuals. *Id*. at ¶¶ 31-32.

Plaintiff's case was placed in the Alternative Dispute Resolution ("ADR") Pilot Program,

which requires that the parties conduct a selected ADR process within sixty (60) days after the initial Case Management Conference or filing of the initial Case Management Order, whichever occurs first. United States District Court for the Western District of Pennsylvania, Alternative Dispute Resolution Policies and Procedures, Rule 6.4. In this case, a Case Management Conference was held on June 20, 2007 and a Case Management Order was filed on that same day. Accordingly, pursuant to Rule 6.4, ADR should have occurred on or before August 20, 2007. As of the date of this Memorandum Opinion, and for the reasons set forth below, ADR has not yet occurred in this case.

Further, pursuant to this Court's Practices and Procedures, discovery must be completed within 150 days of the date of the initial Case Management Conference. Practices and Procedures of Judge Nora Barry Fischer at ¶ III.B.1. Accordingly, the deadline for discovery in this case was November 15, 2007. As set forth below, minimal discovery has occurred.

## II.     Procedural History

1. On February 27, 2007, Plaintiff filed her complaint in this action. (Document No. 1).

2. On April 6, 2007, this case was reassigned from Judge Thomas Hardiman to the undersigned Judge. (Text Only Docket Entry dated April 6, 2007).

3. On June 20, 2007, this Court held a case management conference attended by counsel for Defendants, Thomas B. Anderson (in person), and counsel for Plaintiff, Lois Glanby (by telephone). (Document No. 8). Counsel for Plaintiff failed to attend the conference at the scheduled time. The Court then called her office and required that she attend by telephone.

4. During the June 20, 2007 case management conference, counsel for Plaintiff agreed to provide certain medical records and/or reports documenting Plaintiff's spasm condition so that Defendant could assess the potential for mediation in this case. (Document No. 10).

5. On June 27, 2007, Defendants served on Plaintiff interrogatories and requests for production of documents pursuant to which Defendants also sought production of Plaintiff's medical records. (Document No. 20 at p. 2).

6. As of July 10, 2007, Plaintiff had not produced to Defendants the medical records requested during the June 20, 2007 Case Management Conference. Accordingly, on July 10, 2007, this Court ordered that such records must be produced on or before August 10, 2007. (Document No. 10).

7. On August 22, 2007, Defendants filed a Motion to Compel stating that Plaintiff had failed to respond to this Court's July 10, 2007 Order and Defendants' June 27, 2007 discovery requests. Defendants' Motion to Compel requested that the Court dismiss Plaintiff's complaint, or, in the alternative, issue a further Order directing Plaintiff to produce outstanding discovery responses within 10 days, including the medical records requested during the June 20, 2007 Case Management Conference. (Document No. 12).

8. On August 30, 2007, this Court granted Defendants' Motion to Compel and Ordered that Plaintiff "respond to Defendants' discovery requests and provide medical records and reports, or in lieu of the same, completed authorizations on or before September 15, 2007. No further extensions on these discovery requests will be granted and Plaintiff risks dismissal if Plaintiff and counsel do not comply with this Order." (Document No. 14).

9. On September 18, 2007, having received a report from Defendants' counsel that Plaintiff had failed to comply with this Court's August 30, 2007 Order, the Court issued a Show Cause Order. Plaintiff was directed to respond to such Order by noon on September 21, 2007 by stating why this case should not be dismissed. (Document No. 15).

4

10. Plaintiff failed to respond to this Court's Show Cause Order and, on September 21, 2007, this Court entered an Order dismissing Plaintiff's case for failure to comply with this Court's Orders and for failure to prosecute. (Document No. 16).

11. Following the Court's Show Cause Order, Plaintiff did not contact the Court in any manner until October 5, 2007, when Plaintiff filed a Motion for Reconsideration requesting that this Court reconsider its order dismissing this case. (Document No. 17).

12. On October 12, 2007, Defendants filed a Response to Plaintiff's Motion for Reconsideration. (Document No. 18).

13. On October 18, 2007, this Court ordered that Defendants file an additional response to Plaintiff's Motion for Reconsideration supplying legal authority in support of Defendants' Response. (Document No. 19).

14. On October 29, 2007, in compliance with this Court's Order, Defendants filed a Brief in Opposition to Plaintiff's Motion for Reconsideration. (Document No. 20).

15. On November 13, 2007, this Court held a hearing on Plaintiff's Motion for Reconsideration. Plaintiff and her counsel, Robert M. Owsiany[2] and Lois Glanby, and Defendants' counsel, Thomas B. Anderson, appeared. Although Mr. Owsiany arrived on time for the scheduled hearing, the Court notes that Ms. Glanby arrived approximately ten (10) minutes late. Mr. Owsiany provided argument on behalf of Plaintiff and Ms. Glanby.

16. During the hearing, given the dispute between counsel as to what was provided by Plaintiff in response to discovery requests, the Court Ordered that both parties provide the Court with

---

[2]Despite the fact that he argued on behalf of Plaintiff in the hearing before this Court, as of the date of this Memorandum Opinion, Mr. Owsiany has not entered his appearance in this case.

supplemental information, to be hand delivered to the Court on or before November 21, 2007.

17. In compliance with this Court's Order, counsel for Plaintiff hand delivered to the Court on November 21, 2007 a Declaration of Melissa Ridenour (a former law clerk to Ms. Glanby) stating that she unsuccessfully attempted delivery of certain discovery responses to Defendants' counsel on September 17, 2007 and successfully delivered the same on September 18, 2007, and copies of the documents Plaintiff's counsel claims were delivered to Defendants' counsel's office on behalf of Plaintiff on September 18, 2007.

18. Also, in compliance with this Court's Order, on November 14, 2007, counsel for Defendants mailed to the Court a copy of the discovery materials Defendants' counsel states he received from Plaintiff's counsel on September 18, 2007.

19. In addition, at this Court's request, on November 21, 2007, counsel for Defendants hand delivered to the Court a statement of legal fees expended by Defendants related to the discovery issues initially resulting in dismissal and then reconsideration of this case. In said statement, counsel for Defendants represented that the legal fees related to these matters total $2,581.50.

**III. Plaintiff's Counsel's Explanation of Events**

In Plaintiff's Motion, and in the hearing before this Court, Plaintiff sets forth a series of facts in an attempt to explain why she failed to timely deliver the requested materials to counsel for Defendants and why she failed to respond to this Court's Show Cause Order.

First, Plaintiff explains that the requested documents and discovery responses were indeed delivered to Defendants' counsel in response to this Court's August 30, 2007 Order, albeit one day late. (Document No. 14). Plaintiff states that the due date imposed in the August 30, 2007 Order of September 15, 2007 fell on a Saturday. Prior to the deadline, Plaintiff's counsel (hereinafter, "Ms.

6

Glanby") contacted Defendants' counsel who agreed that Plaintiff could produce the discovery responses on Monday, September 17, 2007. (Document 17 at ¶ 2). Neither Ms. Glanby nor Defendants' counsel notified the Court of this agreement until Plaintiff referenced the same in her Motion for Reconsideration. On September 17, Ms. Glanby's law clerk, a recent law school graduate not yet admitted to practice in this jurisdiction, attempted to deliver the discovery responses to Defendants' counsel. *Id*. at ¶¶ 3-4. When Ms. Glanby's law clerk arrived at Defendants' counsel's office, however, the office was closed for the day. *Id*. at ¶ 4. Unwilling or unable to leave the discovery responses at that time, Ms. Glanby's law clerk attempted delivery once again, this time successfully, the following morning. *Id*. at ¶ 5.[3] At this time, Plaintiff alleges that Defendants' counsel received the following from Plaintiff: Plaintiff's answers to Defendants' interrogatories; medical authorizations executed by Plaintiff identifying her healthcare providers; Plaintiff's W-2 forms and Social Security disability records; correspondence between Defendant Laurel Highlands Foundation and Plaintiff concerning Plaintiff's termination; and a file obtained from the EEOC. *Id*. at ¶ 6. Plaintiff contends that the documents provided to Defendants complied in all material respects with Defendants' discovery requests. *Id*. at ¶ 7. Despite delivery of the same, this Court issued a Show Cause Order on September 18, 2007 for Plaintiff's seeming failure to comply with its Order of August 30, 2007. *Id*. at ¶ 8. As set forth above, Plaintiff failed to respond to the Show Cause Order and this Court entered an Order dismissing Plaintiff's case. (Document No. 16).

In explaining her failure to respond to the Show Cause Order, Plaintiff states that she "fully intended to comply" with the Order as she believes she had materially complied with the Court's

---

[3]On November 21, 2007, Plaintiff submitted to this Court and counsel for Defendants via U.S. Mail a declaration of Melissa Ridenour, Ms. Glanby's former law clerk, in which Ms. Ridenour verified the aforementioned statements. Ms. Ridenour's declaration is not filed of record.

August 30, 2007 Order regarding her discovery responses. *Id*. at ¶ 9. On the morning of September 21, 2007, however, Ms. Glanby "had to go to her bank in order to respond to an identity theft and theft of funds problem." *Id*. Ms. Glanby's coworkers were likewise unavailable to file a response to the Show Cause Order that day. *Id*. Accordingly, Plaintiff argues, her failure to respond to the Show Cause Order was not deliberate, but was inadvertent and an instance of excusable neglect. *Id.* The Court notes that Plaintiff failed to seek an extension or otherwise make contact with the Court regarding this matter until 14 days later, on October 5, 2007, when she filed this Motion for Reconsideration.

## IV.   Defendants' Response to Plaintiff's Motion for Reconsideration

Defendants argue that Plaintiff's Motion for Reconsideration should be denied because the discovery responses ultimately provided on September 18, 2007 were inadequate in that the responses to interrogatories were false and/or nonresponsive. (Document No. 18 at ¶¶ 3-5). For example, in response to Defendants' interrogatory regarding actions taken by Plaintiff to secure other employment or mitigate damages, Plaintiff responded with "who would hire someone with an abuse connected to them." *Id.* at ¶ 6. In addition, in response to Defendants' interrogatory number 7, which requested the identity of Plaintiff's healthcare providers during the last five years, Plaintiff responded with "None." *Id.* at ¶ 7. Defendants note that this response is obviously inaccurate given the fact that Plaintiff produced two signed authorization forms for her medical providers. (Document No. 20 at p. 5).

Defendants also argue that Plaintiff's responses to Defendants' requests for production of documents were not complete, not signed by counsel and not verified by Plaintiff. (Document No. 18 at ¶¶ 3-5). Defendants requested the following documents during discovery:

1.  authorizations for the medical providers identified in answers to interrogatories 7 and 8;

2.  all documents related to communications between Plaintiff or her attorneys and defendant or any of its agents, employees or affiliates;

3.  Plaintiff's W-2 forms for the years of 2003, 2004, 2005 and 2006;

4.  Plaintiff's income tax returns filed in 2003, 2004, 2005 and 2006;

5.  any documents evidencing Plaintiff's efforts to obtain suitable substitute employment;

6.  Plaintiff's curriculum vitae;

7.  any and all notes, diaries, or other items or writings in Plaintiff's possession which in any way reference employment with Laurel Highlands Foundation, Inc.;

8.  all documents submitted to the EEOC and/or any other government entity or agency by Plaintiff or her attorneys;

9.  any reports, writings, or items from any persons/experts identified in responding to the interrogatories;

10. a curriculum vitae for each person/expert identified in responding to the interrogatories; and

11. any other items, writings or documents identified or referenced in responding to interrogatories.

Defendants argue that the only documents provided in response to such requests were two (out of date) authorizations for release of healthcare information, a letter from Laurel Highlands Foundation dated February 17, 2007 that had already been produced to Defendants, Plaintiff's W-2 forms for 2005 and 2006 and an explanation of benefits from the Social Security Administration. No documents nor answers were produced in response to requests for production numbers 2, and 4-11. (Document No. 18 at ¶¶ 5, 6, 9-13).

V.  **Analysis**

The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or

to present newly discovered evidence*." Harsco Corp., v. Zlotnicki*, 779 F.2d 906 (3d Cir. 1985). Such a motion should only be granted "if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion. . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice*." Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A motion for reconsideration will not be granted if the moving party is merely asking the court to "rethink what has already been decided." *Glendon Energy Co. v. Borough of Glendon*, 836 F.Supp. 1109, 1122 (E.D.Pa. 1993). Plaintiff's Motion, as well as the hearing thereon, provides the Court with new evidence that she complied, at least in part, with this Court's August 30, 2007 Order, and evidence that her apparent failure to comply with the Show Cause Order was excusable.

Pursuant to Federal Rule of Civil Procedure, this Court may impose sanctions on a party who fails to comply with an order compelling discovery, including responding to interrogatories or document requests. Such sanctions include "dismissing the action or proceeding or any part thereof. . ." Fed.R.Civ.P. 37. Dismissal of an action is a severe sanction, reserved for the most egregious of circumstances. *Roman v. City of Reading*, 121 Fed. Appx. 955, 958 (3d Cir. 2005). In determining whether dismissal is warranted, this Court must consider the following factors: 1) the extent of *the party's personal responsibility*; 2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; 3) a history of dilatoriness; 4) whether the conduct of the party or the attorney was willful or in bad faith; 5) the effectiveness of sanctions other than dismissal; and 6) the meritoriousness of the claim or defense. *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984). The Court need not find each and every factor in

order to justify dismissal. *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988). When a district court has doubt, the decision of whether to dismiss "should be resolved in favor of reaching a decision on the merits" and alternative sanctions should be used. *Roman*, 121 Fed. Appx. at 958 (quoting *Scarborough v. Eubanks*, 747 F.2d 871, 878 (3d Cir. 1984)). The *Poulis* factors, however, do not provide a "magic formula whereby the decision to dismiss or not to dismiss becomes a mechanical calculation easily reviewed by" the Court of Appeals. *Durah v. Rustin*, 05-1709, 2005 WL 2924788 (W.D.Pa., Oct. 10, 2006) (quoting *Mindik v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)). Indeed, this Court's decision must be made in the context of its "extended contact with the litigant." *Id.* Further, if appealed to the Court of Appeals for the Third Circuit, this Court's decision will be reviewed for abuse of discretion. *Poulis*, 747 F.2d at 868. This Court will now consider each of the *Poulis* factors.

### 1.    The Extent of the Party's Personal Responsibility

Neither Defendants nor Ms. Glanby suggest that Plaintiff herself is responsible for the delay in producing discovery materials and the failure to comply with the deadlines set by this Court and the Federal Rules of Civil Procedure, which are the basis for dismissal in this case. Moreover, Plaintiff advised in open court that she did not cause any delays and promptly responded to any requests made by her counsel. While this factor does not weigh in favor of dismissal, it is not dispositive of the issue, as a client "cannot always avoid the consequences of the acts or omissions of its counsel." *Poulis*, 747 F.2d at 868. In considering Plaintiff's Motion, however, the Court placed great weight on this factor because it is apparent that Plaintiff herself is not personally responsible for the delays in this litigation.

### 2.    Prejudice to Defendants

In determining whether Plaintiff's failure to produce discovery materials resulted in prejudice to Defendants, the Court must consider the burden imposed by "impeding a party's ability to prepare effectively a full and complete trial strategy." *Roman*, 121 Fed. Appx. at 959. Prejudice, however, does not require "irremediable harm." *Id*. Where, as here, a defendant "encountered lack of cooperation from the plaintiff in areas where the plaintiff should cooperate under the spirit of the federal procedural rules," prejudice to the defendant has occurred. *Poulis*, 747 F.2d at 868. Further, the Third Circuit has held on many occasions that failure to respond to interrogatories and document requests is prejudicial to the defendant. *Id*.; *Roman*, 121 Fed. Appx. at 959; *Curtis T. Bedwell and Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683 (3d Cir. 1988). Moreover, as defense counsel pointed out in oral argument, he represents both an institution and an individual.

Plaintiff failed to provide Defendants with the documents needed to evaluate Plaintiff's claims as well as Defendants' defenses. Indeed, this case was designated for placement in the Court's Alternative Dispute Resolution Program on March 1, 2007. (Document No. 2). As discussed during the June 20, 2007 Case Management Conference in this matter, Plaintiff agreed to provide Defendants with certain medical documentation so that Defendants could assess the potential for mediation and potential settlement of this case. More than five months later, well after the sixty (60) day time period allotted for conducting ADR, mediation has not occurred and Defendants have continued to pay legal fees without the ability to assess the merits of this case. Further, pursuant to the Case Management Order in this case, the discovery deadline in this case was November 15, 2007 and summary judgment motions are due on December 17, 2007. Even though discovery has ended and the deadline for filing summary judgment motions is fast approaching, Defendants still have not had the opportunity to evaluate their case, nor will they have the opportunity to request additional

discovery without seeking an extension of the discovery deadline. Accordingly, this Court finds that Defendants are prejudiced by Plaintiff's lack of cooperation and that this factor weighs in favor of dismissal.

### 3.    History of Dilatoriness

A plaintiff's failure to provide complete discovery responses, even after seeking extensions to do so, and failure to comply with court orders imposing filing deadlines weigh in favor of a finding of dilatoriness. *Roman*, 121 Fed. Appx. at 960; *Poulis*, 747 F.2d at 868. Indeed, failure to respond to discovery and comply with court deadlines is "inconsistent with the efficient administration of justice." *Roman*, 121 Fed. Appx. at 960.

As set forth above, Plaintiff has a long history of dilatoriness related to this case. Defendants, and this Court, have tried unsuccessfully to procure discovery materials from Plaintiff for the last five months. Further, in this case, Plaintiff has failed to adhere to discovery deadlines set forth by the Federal Rules of Civil Procedure, extensions permitted by counsel for Defendants and, most significantly, violated at least two court orders. Moreover, although Plaintiff's counsel provides a reason for not responding to this Court's Show Cause Order, Plaintiff's counsel failed to state in her motion why she remained silent for 14 days after the Court's deadline to respond to the Show Cause Order. Indeed, it was not until the hearing on this motion that Plaintiff's counsel attributed this further delay to circumstances in her own personal and professional life.

As the Third Circuit has held, "[t]ime limits imposed by the rules and the court serve an important purpose for the expeditious processing of litigation." *Id.* Where compliance with such deadlines is not feasible, however, a timely request for an extension should be made. *Id.* Despite knowing that dismissal of this case would result from her failure to comply with this Court's Show

Cause Order, Plaintiff failed to contact the Court on September 21, 2007 to request an extension of time to file her response to the same. During the hearing before this Court on November 13, 2007, Ms. Glanby explained her lack of contact with the Court by citing a series of intervening factors, including personal health problems, identity theft, a possible stalker and that, based on representations made to her, Ms. Glanby believed that her law clerk had timely filed a response to the Show Cause Order. While the Court is sympathetic to the unusual adversity Ms. Glanby and her firm have faced, this adversity does not justify her delay. Ms. Glanby has a duty to her client and to the Court under the Pennsylvania Rules of Professional Responsibility.

However, the Court notes that although Ms. Glanby herself has a history of dilatoriness with this Court, it is her client, not Ms. Glanby who will be punished by dismissal of this case. Moreover, during the hearing on this matter, Plaintiff herself represented to the Court that she provided her counsel with documents and information requested during discovery in a timely manner. Accordingly, while the Court will consider Ms. Glanby's dilatoriness in making its decision on this matter, the Court will also consider that it was Ms. Glanby, not Plaintiff, who is responsible for the repeated delays.

**4.    Whether Conduct of the Party or the Attorney Was Willful or in Bad Faith**

Ms. Glanby characterizes her failure to respond to this Court's Show Cause Order as "excusable neglect" justified by events occurring in her personal life. Courts have found, however, that repeated failure to respond to court orders in and of itself constitutes willful disregard for the Court's authority. *Young Manny Scretching v. Bizmont Entertainment, LLC,* 05-0456, 2006 WL 1642336 (E.D.Pa., June 12, 2006); *Stahl v. EMC Mortgage Corp.*, 07-1189, 2007 WL 3033945 *1 (M.D.Pa., Oct. 15, 2007). While this Court may consider Plaintiff's failure to respond to this Court's

14

Orders as evidence of willful conduct on behalf of Plaintiff and Plaintiff's counsel weighing in favor of dismissal, this Court will also consider the fact that the evidence before this Court does not suggest that Plaintiff herself is to blame for the misconduct in this case.

### 5.      Effectiveness of Sanctions Other Than Dismissal

Dismissal is a sanction of "last, not first, resort." *Poulis*, 747 F.2d at 863.  Accordingly, before imposing the same, this Court must determine whether other sanctions available would be appropriate under the circumstances. *Id.* at 869.  Alternative sanctions include issuing an order refusing to allow the disobedient party to support or oppose designated claims or prohibiting that party from introducing certain evidence, an order striking out pleadings or parts thereof, or ordering the disobedient party to pay a fine or costs associated with that party's failure to comply. Fed.R.Civ.P. 37(b)(2).  As Plaintiff has produced little to no evidence, however, precluding her use of that evidence at trial is not an effective sanction in this case and will not assist Defendants in developing their defense.  Further, based on her response to Defendants' interrogatory regarding mitigation of damages, Plaintiff is not working and likely could not pay a fine or costs to Defendants. Moreover, because the result of the delay in this case is most likely the fault of Ms. Glanby and her staff, not her client, to compel "an innocent party to bear the brunt of its counsel's dereliction" would be unjust.  *Poulis*, 747 F.2d at 896.  Finally, refusing to allow Plaintiff to support her claims is tantamount to dismissal, but will result in increased burden and costs to Defendants.  *See George V. Hamilton, Inc. v. Everett Company, Inc.*, 104 F.R.D. 106, 111 (W.D.Pa. 1985).  Accordingly, this alternate sanction will cost Plaintiff very little and at the same time, will provide little benefit to the Court or to Defendants.

However, the Court is also specifically authorized by the Federal Rules of Civil Procedure

to impose on an attorney "those expenses, including attorney's fees, caused by unjustified failure to comply with discovery orders." *See George V. Hamilton, Inc.,* 104 F.R.D. at 111. (citing Fed.R.Civ.P. 16(f), 37(a)(4), 37(b), 37(d) and 37(g)). Such a sanction is more appropriate in this case, given that the blame for the delay lies with Ms. Glanby herself, not her client.

Indeed, motions to compel and motions for sanctions filed with this Court are not novel to Ms. Glanby or her clients. Sanctions have been imposed on Ms. Glanby as recently as last month for violating Rule 11. See *Biernacki v. UMPC, et al.*, Civ. Action No. 06-591. In addition, parties have moved for sanctions against Ms. Glanby's clients for failure to appear for depositions. *See Barrett v. Vesuvius MacDanel, et al.*, Civ. Action No. 06-994 (motion for sanctions denied but plaintiff ordered to appear for deposition); *Heater v. Impro Corp., et al.*, Civ. Action No. 06-1264 (motion for sanctions denied, but plaintiff ordered to appear for deposition). Further, Ms. Glanby's clients are often the recipients of motions to compel discovery responses and even sanctioned as the result of failing to respond to discovery. *See Curges v. Atria's Federal Street, LLC, et al.*, Civ. Action No. 07-444 (motion to compel granted with instruction that if defendants find deficiencies in said responses, defendant may request sanctions); *Wolfe v. Central Blood Bank of Pittsburgh, et al.*, Civ. Action No. 07-254 (motion to compel granted and plaintiff precluded from using any documents produced in response thereto in response to any motion for summary judgment filed by defendant or at trial of this matter). While this Court cannot blame Plaintiff for the deficiencies of Ms. Glanby and her other clients, the Court must consider that failure to comply with discovery orders appears to be a chronic problem with Ms. Glanby's practice. Given the Court's experience with Ms. Glanby related to this case, the Court cannot help but speculate that Ms. Glanby herself is the cause of many of these problems and has considered the same in rendering this decision.

### 6. The Meritoriousness of the Claim

A claim is meritorious for purposes of this inquiry where "the allegations of the pleadings, if established at trial, would support recovery by the plaintiff." *Poulis*, 747 F.2d at 870. In determining whether Plaintiff's case is meritorious, this Court will apply the standard used in deciding default judgment motions. *Id*. Thus, the Court will not consider materials outside of the pleadings. *See George V. Hamilton, Inc.*, 104 F.R.D. at 111.

In this case, Plaintiff claims that she was discriminated against by her employer on the basis of her age, race and disability/perceived disability when she was terminated from her position after being falsely accused of striking a resident of Defendants' residence for mentally retarded individuals, where Plaintiff was employed. (Document No. 1 ¶11). Plaintiff claims that what her employer perceived as a striking motion was actually a hand and arm spasm caused by her medical condition. *Id.* Plaintiff, however, has not produced any evidence of this condition, nor has she pled any details related to this condition, including its name.

While Plaintiff alleges that her employer discriminated against her, Defendants deny that such discrimination occurred, and in fact advance a legitimate, non-discriminatory reason for her termination, *i.e.* that Plaintiff struck a resident of the facility where she worked. Plaintiff's failure to produce documentation of her alleged disability or allege details of the same handicaps this Court's evaluation of Plaintiff's case. *See Young Manny Scretching,* 2006 WL 1642336 at *6. Accordingly, this Court is unable to assess the meritoriousness of Plaintiff's claim.

### 7. Balancing of the *Poulis* Factors

Although the sanction of dismissal is disfavored, particularly in cases such as this one where

the Plaintiff is not personally responsible for the conduct resulting in dismissal, the sanction of dismissal, "must be available" in some cases, to achieve the deterrent effects proscribed by Rule 37. *Curtis T. Bedwell and Sons, Inc.*, 843 F.2d at 696 (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976)). This Court finds that, on reconsideration, the weight of the *Poulis* factors, as well as this Court's "contact with the litigant," weigh against dismissal of this action because, despite Ms. Glanby's egregious conduct, Plaintiff is not personally responsible for such behavior. *See Durah*, 2005 WL 2924788.

As set forth above, Plaintiff, through her counsel, has had multiple opportunities to produce documents and complete discovery responses and specifically, provide Defendants with evidence of her arm spasm condition, and has failed to do so. Plaintiff's counsel has violated two Orders of this Court and the Federal Rules of Civil Procedure and failed to offer a reason for her lack of response to the Show Cause Order until filing the Motion for Reconsideration, 14 days after this case was initially dismissed. From what this Court understands, Plaintiff's position as to why her counsel failed to respond to the Court's Show Cause Order could have been easily resolved with a phone call to the Court on September 21, 2007, or even during one of the following days. While the Court recognizes Ms. Glanby's need to take care of her personal affairs, she still had an obligation to her client, and this Court, to comply with the deadline set by the Court, or request an extension. This is so, particularly, where Ms. Glanby knew that the consequence for her client, given the Court's Order of August 30, 2007, could be dismissal of her client's claims. That said, the delay in this case and any prejudice arising therefrom appears to be entirely the fault of Ms. Glanby, and not of her client. Accordingly, the sanction of dismissal is not warranted here because Plaintiff herself is not the cause of these problems.

While dismissal is not an appropriate sanction in this case, Ms. Glanby's noncompliance with Court Orders and lack of professionalism cannot go unnoticed by the Court. Accordingly, the Court hereby Orders that, on or before December 27, 2007, Ms. Glanby shall pay to counsel for Defendants attorney fees and costs associated with the discovery issues resulting in dismissal and reconsideration of this case, including costs associated with responding to and arguing this motion, in the amount of $2,581.50, to be paid in full.

Further, on or before December 12, 2007, Plaintiff shall serve full and complete responses to all outstanding discovery requests. Such responses will be verified by Plaintiff and signed by counsel. Specifically, Plaintiff shall respond in writing to interrogatory numbers 2, 3, 7, 9, 14, 15 and request for production of document numbers 1-11. In addition, Plaintiff shall produce any and all documents requested pursuant to Defendants' request for production of documents, including up to date and signed authorizations for medical providers. Finally, on or before December 27, 2007, Plaintiff shall make herself available for her deposition in this case, to be scheduled at the offices of defense counsel.

## V.      Conclusion

For the reasons set forth above, Plaintiff's Motion is therefore GRANTED. An appropriate Order follows.

s/Nora Barry Fischer
United States District Judge

cc/ecf: Counsel of Record